IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| ROBERT ESTRADA, III ) | No. 3:22-bk-02944 |
| SUSAN ALICE ESTRADA ) | Chapter 11 proceedings |
|     Debtors. ) | Judge Mashburn |
| ) | |

**DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
(Subchapter V)

This Plan is for a small business debtor under Subchapter V. Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."

**Brief History of the Business Operations of the Debtor**. Debtors, Robert Estrada, III & Susan Estrada are owners and operators of a restaurant, Bayou Cypress Restaurants, Inc., which started in Hendersonville, TN and eventually expanded to Mt. Juliet, TN. To grow the restaurant business to Mt. Juliet, the Debtors signed personal guarantees on a significant amount of business loans. After operating the Mt. Juliet location, the Debtors realized that the Mt. Juliet restaurant was not viable. However, when filing this Chapter 11 proceeding, the Debtors believed that the Hendersonville restaurant could still be viable, and initially sought to reorganize the financial affairs of the business to bring the debts in line with the new income of just operating the Hendersonville location. After spending some time in Chapter 11, the Debtors concluded Bayou Cypress Restaurants, Inc., bankruptcy case number 3:22-bk-02945, was not viable and elected to consent to conversion to Chapter 7. Therefore, the Debtors are not seeking employment to replace the loss of income from closing the business.

A. <u>Liquidation Analysis</u>. In the event a general unsecured claim is filed, here is the liquidation analysis:

| ROBERT ESTRADA, III & SUSAN ESTRADA - LIQUIDATION ANALYSIS | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| Market Value | Secured Value | Equity | Description | | |
| $293,566.00* | $246,444.44 | $47,121.56 | 170 Cobbler Circle* | | |
| $26,000.00 | $0.00 | $26,000.00 | 2018 Toyota Highlander | | |
| $26,000.00 | $15,400.07 | $10,599.93 | 2019 Nissan Murano | | |
| $17,475.00 | $0.00 | $17,475.00 | Household Goods | | |

| | | | | | |
|---|---|---|---|---|---|
| $1,000.00 | $0.00 | $1,000.00 | Collectibles of Value | | |
| $2,500.00 | $0.00 | $2,500.00 | Firearms | | |
| $3,000.00 | $0.00 | $3,000.00 | Clothes | | |
| $15,550.00 | $0.00 | $15,550.00 | Jewelry | | |
| $0.00 | $0.00 | $0.00 | 1 Cat | | |
| $477,000.00 | $0.00 | $477,000.00 | 401K | | |
| $0.00 | $0.00 | $0.00 | Life Insurance Policies | | |
| $38,548.43 | $0.00 | $38,548.43 | DIP Account | | |
| | | | | | |
| $899,573.43 | $261,844.51 | $638,794.92 | Totals | | |
| | | | | | |
| Liquidation Value of Estate | | $ 638,794.92 | | | |
| | | | | | |
| Exemptions | | $ 552,500.00 | | | |
| Auctioneer Fee** | | $ 12,900.74 | | | |
| Less Trustee Fees | | $ 20,603.67 | | | |
| Less Priority Creditors | | $       - | | | |
| | | | | | |
| Amount Available for Unsecured Creditors | | $ 52,791.25 | | | |
| | | | | | |

*The value is net of real estate commissions, closing costs
** The auctioneer fee is based at 10% of sales, and doesn't include the real property

B. <u>Feasibility Projections -</u>  The Debtors are aggressively seeking to find employment elsewhere and hope to accomplish their goal in the next 30 to 60 days.  Until Debtors' obtain employment, the Debtors' son-in-law, Hunter Owen, has advised that he is willing to fund their Chapter 11 Plan if it is necessary for him to do so.

i. **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**.

# ARTICLE I
## SUMMARY

1.01    This Plan of Reorganization under Chapter 11 of the Code (the "Plan") proposes to pay the creditors of Robert Estrada, III and Susan Alice Estrada (the "Debtors") from future income of the Debtors as set forth herein.

1.02    This Plan provides for the following classes – Administrative Claims, Priority Claims, Secured Claims, Priority Unsecured Claims, Non Priority Unsecured Claims, and the interest of the Debtor and/or the Equity Security Holders.

1.03    Non-priority unsecured creditors holding allowed claims, if any, will receive pro rata distributions from the ongoing cash flow of the debtor.

1.04    All creditors and equity security holders should refer to Articles III through VII of

this Plan for information regarding the precise treatment of their claim.

      1.05    **Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. If you do not have an attorney, you may wish to consult one**.

## ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

      2.01    Class 1. This class shall consist of all allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8).

      2.02    Class 2. This class shall consist of the claim of Freedom Mortgage to the extent allowed as a secured claim.

      2.03    Class 3. This class shall consist of the claim of Nissan Motor Acceptance to the extent allowed as a secured claim.

      2.04    Class 4. This class shall consist of all unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class..

      2.05    Class 5. This class shall consist of the interests of the individual Debtor in property of the estate.

## ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND, AND COURT FEES

      3.01    Unclassified Claims. Pursuant to § 1123(a)(1), administrative expense claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

      3.02    Administrative Claims. Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. The only claimants that would be in this class are the unpaid administrative claims of both Steven L. Lefkovitz as counsel for the Debtor and Glen Watson as the SubChapter V Trustee which combined should be less than $20,000.00.

            3.02.1 In the alternative to Article 3.02, in the event this Plan is non- consensually confirmed under § 1191(b), each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full through cash disbursement of all available funds that are not specifically dedicated to set monthly payments within this Plan.

      3.03    Priority Tax Claims. There are no claimants in this class to the best of the Debtor's knowledge information and belief.

3.04  Post-Confirmation Tax Claims. All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

**ARTICLE IV**
TREATMENT OF CLAIMS, LIENS, AND INTERESTS UNDER THE PLAN

4.01  Claims and interests shall be treated as follows under the Plan:

| *Class No. 2.02* | *Holder of Claim or Interest:* *Freedom Mortgage* | *Impaired* |
|---|---|---|
| ***Plan Treatment*** | | |
| Freedom Mortgage has an allowed secured claim on the Debtors' residence, and the Debtors propose to treat the claim as a long-term continuing obligation. On the Effective Date following Confirmation of this Plan, the Debtors shall bring current all prepetition arrearage currently estimated at $134.02, and post-confirmation arrearage in the approximate amount of $6310.28 for the months of October 1, 2022 to January 1, 2023. The Debtors shall make the ongoing monthly payment, including escrow, currently estimated at $1577.57 per month for a period of 3 months. | | |

| *Class No. 2.03* | *Holder of Claim or Interest:* *Nissan Motor Acceptance* | *Impaired* |
|---|---|---|
| ***Plan Treatment*** | | |
| Nissan Motor Acceptance has an allowed secured claim on the Debtors' 2019 Nissan Murano, and the Debtors propose to treat the claim as a long-term continuing obligation. On the Effective Date following Confirmation of this Plan, the Debtors shall bring current all prepetition arrearage in the amount of $0.00, and post-confirmation arrearage in the approximate amount of $2490.92 for the months of October 1, 2022 to January 1, 2023. The Debtors shall make the ongoing monthly payment currently estimated at $622.73 per month for a period of 3 months. | | |

| Class No. 2.04 | Holder of Claim or Interest: All Allowed Unsecured Claims | Impaired |
|---|---|---|
| | *Plan Treatment* | |
| This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class. All scheduled, and amended unsecured claims are reflected as contingent, and unliquidated and potentially disputed on the Debtors' Schedule F. These debts arose out of obligations of the business in which the Debtors' signed personal guarantees. Since the business has substantial assets that have not yet been liquidated, and the amount of the personal liability is contingent upon the ability of the business to satisfy these obligations, the creditors are required to file proofs of claims in this case by the applicable proof of claim bar dates. After review of the claims register, it appears that these creditors have not yet filed proofs of claims to date. In the event there is an allowed general unsecured claim filed by the applicable proof of claim bar dates, then the Debtors shall pay a pro rata distribution for a period of no more than 60 months from entry of the confirmation order in equal monthly payments in the amount of $1000 per month for a total amount of $54,000. Said payments shall commence on the 1st business day of the sixth month following entry of the confirmation order, and on the same day of each month thereafter until $54,000 has been paid in full. | | |

| Class No. 2.05 | Holder of Claim or Interest: Equity Interests | Not Impaired |
|---|---|---|
| | *Plan Treatment* | |
| The Debtor will retain all ownership rights in property of the estate. | | |

4.02   Waiver of Secured Status and Lien Rights by Claimants.  *In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan. Further, in the event a claimant listed or scheduled as secured files a proof of claim asserting that all or part of its claim is unsecured, the filing of such proof of claim shall operate as a lien waiver and this Plan may be recorded with the Davidson County Register of Deeds to evidence the release of such lien.*

4.03   Proof of Claim Controls Over Amount Scheduled by Debtor.  The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

4.04   Voiding of Liens. Except as otherwise provided under the Plan, Confirmation will void all liens in excess of the Allowed Secured Claims pursuant to § 506(d)**.**

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 <u>Objection to Claims</u>. The Debtors or any party in interest may file an objection to any claim in any class on or before the first anniversary of the Effective Date. Objections not filed within such time will be deemed waived. If any claim or portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

5.02 <u>Disputed Claim</u>. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors, or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.03 <u>Delay of Distribution on Disputed Claims</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtors' sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

5.04 <u>Settlement of Disputed Claims</u>. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtors shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 There are no known executory contracts or unexpired leases of the Debtors.

6.02 Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any non-governmental creditors that believe they hold claims with respect to contracts rejected hereunder shall file a proof of claim on or before **the deadline set by the Court**. Any such timely filed allowed claims will participate in the distribution for unsecured creditors set out within the Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 The Debtors anticipates the funds to meet the plan payments shall come from the daily operations of the Debtors restaurant business.

## ARTICLE VIII
## GENERAL AND MISCELLANEOUS PROVISIONS

8.01 <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

a. "Adequate Protection Payments" shall mean payments made by the Debtor to creditors holding claims secured by property of the Debtors, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b. "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq*.

c. "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

d. "Court" shall mean the United States Bankruptcy Court for the Middle District of Tennessee and the Judge assigned to this case.

e. "Debtors" shall mean Robert Estrada, III and Susan Estrada. with the status of, and the rights conferred to, a Debtor-in-possession by § 1184 of the Code.

f. "Disposable Income" shall mean all surplus income received by the Debtors after the Debtors' payment of their portion of the reasonable and necessary living expenses of the Debtors.

g. "Effective Date" shall mean the first business day of the month following Confirmation.

h. "Interests" shall mean the ownership interests held by the Debtor in Property.

i. "Petition Date" shall mean **September 14, 2022**.

j. "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

k. "Plan Payments" shall mean all funds remitted by the Debtors, the Reorganized Debtors, and/or third parties on behalf of the Debtors or Reorganized Debtors to be distributed pursuant to the Plan.

l. "Reorganized Debtors" shall mean the Debtor after Confirmation.

8.02 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.04 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06 Retention of Jurisdiction of the Court. In addition to the continued jurisdiction after plan Confirmation that is provided for as a matter of law by the Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a) To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter final orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

(h) Except as otherwise provided in this Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Plan;

(i) To enter a final order concluding and terminating this case;

(j) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Sections 10.02 and 10.04 of this Plan; and

(k) To determine such other matters as may be provided for in the Confirmation order.

8.07   **Withdrawal of Plan**. At the option of the Debtors, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.08   **Retention of Claims**. Pursuant to § 1123(b)(3)(B) of the Code, the Debtors shall retain each and every claim, demand or cause of action whatsoever which the Debtors may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.09     Continued Reporting Requirements. Pursuant to Fed. R. Bank. P. 2015, the Debtors is required to file monthly operating reports until Confirmation. After Confirmation, the Debtors are required to file quarterly reports until the case is administratively closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

8.10     Exemptions from Transfer Tax. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(a) of the Code.

8.11     Modification of the Plan. The Debtors may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtors, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of Confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability the Debtors to modify the Plan under § 1193 of the Code and applicable rules.

8.12     Early Payment. Nothing herein shall prohibit the Reorganized Debtors from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtors to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtors shall not be prohibited from making an early payment, provided that the Debtors are current on any payments required herein.

8.13     Preservation of Claims and Causes of Action. The Debtors retain and reserve all causes of action. It is the intent of the Debtors that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtors' schedules or this Plan. The Debtors shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation order shall not bar the Debtors by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting, or defending any matter, avoidance action, or cause of action. Any and all creditors identified in Questions 6 and/or 7 to Debtor's Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date may be the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtors may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Plan and the Debtors' filed Schedules and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to

recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtor within 90 days prior to the Petition Date.

      8.14    Default Under Plan. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtor (i) fails to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the property securing the creditor's claim for the value of the property, or (iii) disposes of the property securing the claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

## ARTICLE IX
### EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION

      9.01    Vesting of Property. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtors' estate in the Debtors.

      9.02    Property Free and Clear. Except as otherwise provided in the Plan, all property shall be free and clear of all claims, liens, and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Plan.

9.03     Legal Binding Effect. The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

9.04     Effect on Third Parties. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

9.05     Release of Claims. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtors or any of its assets or properties, including without limitation any claim accruing after the Petition Date and prior to the Effective Date.

9.06     Permanent Injunction. Except as otherwise expressly provided or permitted under this Plan, upon Confirmation all claimants and persons who have held, hold or may hold claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors on account of claims against the Debtors, or on account of claims released pursuant to section 9.05 of the Plan;
(ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtors arising from a claim. This does not enjoin the prosecution of any claims arising on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any claim that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative claims incurred prior to the date of Confirmation are permanently enjoined from asserting any Claim against the Debtors or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Code.

9.07     Exculpation. Except as otherwise provided in the Plan or Confirmation order, the Debtors and the professionals for the Debtors shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

9.08     Discharge [if under § 1191(a)]. If this Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtors will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtors will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted

from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.09     Discharge [if under § 1191(b)]. If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtors will not be discharged from any debt (i) on which the last payment is due after the first 5 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

10.01  Closing of the Case. After the Effective Date, upon the payment of all outstanding administrative claims and the commencement of payments to priority creditors and secured claimants, the Reorganized Debtor will seek an Order closing the case through the filing of a final accounting and a motion for a final decree as required under Bankruptcy Rule 3022.

10.02  Professional Fees after Confirmation. In the period after Confirmation, but before closing of the case, the Reorganized Debtors may continue to avail itself to the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtors and the Trustee, who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth hereinbelow. In any *Motion for Final Decree*, the Reorganized Debtors shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Reorganized Debtors' *Motion for Final Decree*, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

10.03  Continued Execution of the Plan after Closing. After closing of the case, the Reorganized Debtors shall remit all Plan Payments to the appropriate holders of allowed claims provided for in the Plan. Upon all payments having been distributed, the Reorganized Debtors shall be authorized to reopen the case, satisfy any additional requirements under the Code and receive a discharge.

10.04  Professional Fees after Closing. After closing of the case, the Reorganized Debtors may continue to avail itself to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan. In the event such professional services are rendered, or expenses are incurred by any Professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtors, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtors, or the Trustee, in the event the Trustee remains in place to receive and distribute funds under the Plan. Pursuant to Section 8.06(j) of this Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in

the event of such an objection or dispute.

**Respectfully submitted,**

**/S/ STEVEN L. LEFKOVITZ**
Steven L. Lefkovitz, No. 5953
Attorney for Debtor
908 Harpeth Valley Place
Nashville, Tennessee 37221
Phone: (615) 256-8300
Fax: (615) 255-4516
Email: slefkovitz@lefkovitz.com

## CERTIFICATE OF SERVICE

I hereby certify that I have sent a true and exact copy of the foregoing to the Assistant United States Trustee; all other parties of record to receive notice electronically; via the United States Bankruptcy Court's CM/ECF system; this December 16, 2022.

**/S/ STEVEN L. LEFKOVITZ**
Steven L. Lefkovitz